UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH
CRIMINAL ACTION NO. 5:17-CR-19-TBR

UNITED STATES OF AMERICA                                                                   Plaintiff

v.

STEPHEN M. PATTERSON                                                                       Defendant

**OPINION AND ORDER**

In May of 2017, Defendant, Stephen M. Patterson Jr., was charged with being a felon in possession of a firearm. (R. 1). In august of 2017, Patterson moved this Court for a competency hearing pursuant to 18 U.S.C. §§ 4241, 4242 and 4247. The Court granted the motion and ordered a psychologic evaluation of Patterson be conducted prior to the hearing. (R. 17). The psychological evaluation was performed at Metropolitan Correctional Center in Chicago by Dr. Schenk, a forensic psychologist. (R. 25). Based on her evaluation, Dr. Schenk prepared a report, which was filed with the Court in February of 2018. In her report Dr. Schenk determined Patterson competent to stand trial. Paterson's competency hearing was then conducted on October 4, 2018. Dr. Schenk testified at the hearing both before and after Patterson gave testimony. Her opinion remained consistent—Patterson may hold unorthodox beliefs, but he is nevertheless competent to stand trial. As explained more thoroughly herein, based on Dr. Schenk's report, and the October 4th competency hearing, the Court agrees with Dr. Schenk. Patterson is competent to stand trial.

**Legal Standard**

Under 18 U.S.C. § 4241 "the district court has not only the prerogative, but the duty, to inquire into a defendant's competency whenever there is 'reasonable cause to believe' that the defendant is incompetent to stand trial." *United States v. White*, 887 F.2d 705, 709 (6th Cir.

1

1989). "[T]he bar for incompetency is high: a criminal defendant must lack either a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' or 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Miller*, 531 F.3d 340, 350 (6th Cir. 2008) (quoting *Drope v. Missouri*, 420 U.S. 162, 172, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975)); 18 U.S.C.S. § 4241(d). The Court's determination must be based on a preponderance of the evidence. 18 U.S.C.S. § 4241(d). In making its determination the Court should consider the defendant's demeanor, any prior medical opinion regarding competency, and any evidence of irrational behavior. *Drope*, 420 U.S. at 180.

## Discussion

To be mentally competent to stand trial, Patterson must possess two things. First, Patterson must possess the ability to understand the nature and consequences of the proceedings against him. 18 U.S.C.S. § 4241(d). Second, Patterson must possess the ability to assist properly in his defense. 18 U.S.C.S. § 4241(d). He Possesses both.

### A. Patterson has the Ability to Understand the Nature and Consequences of the Proceedings Against Him.

The evidence presented by Dr. Schenk, as well as Patterson's testimony and demeanor convince the Court that Patterson understands the nature and consequences of the proceedings against him. Dr. Schenk is highly qualified. She attended the University of Wisconsin, where she majored in psychology and minored in criminal justice. She then went on to West Virginia University, where she received her doctorate in clinical psychology with a focus in forensic psychology. Dr. Schenk then pursued a post-doctoral fellowship specializing in forensic psychology with Georgia Regents University and East Central Regional Hospital in Augusta. Finally, in 2015, she became employed by the Federal Bureau of Prisons as a licensed psychologist.

2

In writing her psychological report for the Court, Dr. Schenk reviewed all the records concerning Patterson's case, but most importantly, Dr. Schenk conducted a variety of in-person interviews with Patterson over the span of roughly two months. Based on her firsthand interaction with Patterson, Dr. Schenk testified that Patterson may have some sincerely held unusual beliefs. For example, Patterson told Dr. Schenk that he was a "vice generate." When asked to define the term, Patterson told Dr. Schenk that it was "an overseer." Patterson also expressed to Dr. Schenk that he thought his name belonged to the United States Government because his mother signed his birth certificate. Patterson at one point even told Dr. Schenk that he heard voices.

But ultimately, Dr. Schenk concluded in her report and testified—before and after Patterson's testimony—that while these beliefs and behaviors are unorthodox, they are not indicative of mental illness or defect which would preclude Patterson from understanding the nature and consequences of the proceedings against him. Instead, from her interaction with Patterson, Dr. Schenk concluded Patterson to be capable of rational understanding, the ability to weigh pros and cons against one another, and a general understanding of how the justice system works. From these determinations, Dr. Schenk testified that it is her professional opinion that Patterson understands the nature and proceedings against him. The Court finds Dr. Schenk's professional opinion to be persuasive. Furthermore, based on Patterson's testimony and demeanor at his competency hearing, the Court shares in Dr. Schenk's opinion.

From Patterson's testimony, the Court finds it undeniable that Patterson sincerely holds some very unorthodox beliefs. Without detailing every single one, the Court notes some of the more prominently unusual. Patterson testified that he was, indeed, a "vice generate." When asked to define the term, Patterson testified that is was "an overseer." Patterson testified that he heard

voices that urged him to do various things such as, better himself, be still, or be aware. Patterson testified that he thought his birthday was the day he was conceived. He also testified that he owned the corporate rights associated with the name Stephen Patterson. Patterson's testimony regarding these unusual ideas and beliefs struck the Court as sincere. Patterson's testimony was not the only indication of his unusual character.

Patterson's behavior is also unusual. Patterson has jumped from a moving car—which he was driving. The car nearly went through a house. Patterson chose to be held in solitary confinement for nearly six months rather than sign his own name on booking documents. But most unusual, Patterson bit the canine unit during his most recent arrest.

But while the Court notes Patterson's unorthodox beliefs and unusual past behavior, these strange beliefs and behaviors do not necessarily demonstrate that Patterson does not understand the proceedings against him. *United States v. Gooch* 595 F. App'x 524, 527 (6th Cir. 2014) ("[M]erely believing in fringe views does not mean someone cannot cooperate with his lawyer or understand the judicial proceedings around him."). While Patterson told Dr. Schenk he is considering "sovereign citizenship", the unusual beliefs espoused by Patterson are not a consequence of such consideration. Nonetheless, the reasoning used by other courts in declaring sovereign citizens mentally competent applies here. Courts have held time and time again when dealing with so called sovereign citizens, that unorthodox beliefs—as unusual as they might be—do not indicate mental incompetency in the absence of mental illness or involuntary behavior. *See United States v. Coleman*, 871 F.3d 470 (6th Cir. 2017); *United States v. Neal*, 776 F. App'x 398, (6th Cir. 2016). Like sovereign citizens, Patterson holds very unusual beliefs. But the Court does not find those beliefs—unusual though they are—to interfere with Patterson's ability to understand the proceedings against him.

Indeed, the Court finds from Patterson's testimony that he is articulate, rational, and fully capable of understanding the proceedings against him. First, Patterson seemed to understand the gravity of waiving the attorney client privilege. So much so, that he declined to do so. Further, Patterson followed up by inquiring about what questions were going to be asked of him, implying that he understood that some of those questions could lead to information which could be used against him by the prosecutor.

Next, when Patterson was asked whether he thought the Grayson County Detention Center was trying to hurt him, he responded that he had no proof, but it is what he felt. This demonstrates Patterson's understanding that allegations or feelings are distinguishable from actual proof.

Further, when asked what Patterson might do if he saw something going wrong, he testified that he would be required by law to report it, and that under the law he does not have the authority to handle situations involving wrongdoing on his own. Patterson testified that he must report wrongdoing, keep it to himself, or get himself in trouble. Patterson's testimony makes it clear that he understands that there may be legal consequences to his actions if they do comport with the law.

In response to the Court's question about what the charges against him were, Patterson properly answered that "the Government says I had a gun and ammunition." When the Court asked what Patterson thought the purpose of the hearing was, Patterson again answered correctly that the hearing was to determine whether he had mental issues. When asked if he thought he had mental issues, he very rationally answered that he did not think so, but that he was not necessarily qualified to answer the question since he had no training regarding such matters. Moreover, Patterson's testimony came across to the Court as calm and articulate. On the whole,

the Court found Patterson's testimony to be calm, thought out, and articulate. Thus, the Court finds that, while Patterson holds unusual beliefs, and has engaged in unusual behavior, he is fully capable of rationally understanding the proceedings against him.

### B. Patterson Possess the Ability to Assist Properly n His Defense

Dr. Schenk's testimony, as well as Patterson's, convince the Court that his capable of assisting in his defense. Dr. Schenk testified that Patterson had a cynical view regarding the criminal justice system—as do many criminal defendants—but that he was capable and willing to cooperate, communicate, and assist his counsel in crafting his defense. The Court was made aware of nothing at the hearing that indicated Patterson could not communicate with his counsel and assist with strategy. As stated above, Patterson appeared calm, articulate, and capable of rational thinking. Moreover, no indication was given to the Court that Patterson refused or could not communicate with his attorney.

The Court notes that Patterson claims not to have memory of being arrested. But Patterson's memory of the events is only one of many sources by which his counsel may obtain the information necessary to determine what happened during the arrest.[1] The fact that Patterson does not remember the arrest or the offense does not preclude him from assisting his counsel. *United States v. Marsee*, No. 6: 04-73-S-DCR, 2006 U.S. Dist. LEXIS 32596, at *14 (E.D. Ky. May 22, 2006) (holding a criminal defendant capable of assisting in his defense even though he claimed to have amnesia); *accord, United States ex rel. Parson v. Anderson*, 354 F. Supp. 1060, 1072 (D. Del. 1972) (holding that lack of memory does not mean that a defendant is mentally incompetent). Therefore, the Court determines Patterson to by fully capable of assisting in his own defense.

---

[1] In fact, it seems there is video footage of the arrest from the arresting officer's body cam.

The Court also notes that at the hearing, counsel for Patterson requested permission to file under seal, certain statements made to her by Patterson throughout the course of representation. Counsel was uncertain on how to proceed since Patterson had not waived the attorney client privilege. The Court was uncertain as to whether it could consider such statements since Patterson had not waived the attorney client privilege. The Court concludes that considering the proposed affidavit would be improper.

While case law on the unique issue is sparse, Black's Law Dictionary and the Code of Conduct for Federal Judges provide adequate guidance. Black's Law Dictionary defines ex parte as something "[d]one or made at the instance and for the benefit of one party only, and without notice to, or argument by, any person adversely interested; of or relating to court action taken by one party without notice to the other." BLACK'S LAW DICTIONARY 616 (8th ed. 2004). The affidavit fits squarely into this definition. It would allow Patterson to communicate concerning the merits of the matter at issue (his mental competency) without facing argument from an adversely interested party—the United States. Thus, the affidavit is ex part communication.

Cannon 3(A)(4) of the Code of Conduct for Federal Judges prohibits ex parte communications unless: (1) the communication is authorized by law, (2) the matter is emergent, (3) the matter is trivial so as not to address substantive matters, (4) the communication is written advice from an expert and both parties have had opportunity to respond and/or object to the written advice, or (5) both parties have consented and the communication is part of mediation or settlement. None of the exceptions to Cannon 3(A)(4)'s prohibition on ex parte communications apply to the proposed affidavit. Therefore, the proposed affidavit is improper, and the Court must decline to accept it.

**Conclusion**

For the reasons stated herein, Defendant Stephen A. Patterson **IS HEREBY DECLARED MENTALLY COMPETENT TO STAND TRIAL**, and this matter shall proceed accordingly.

A **telephonic further proceedings** is hereby scheduled for **November 14, 2018 at 9:00 AM Central Time**. The Court will place the call.

**IT IS SO ORDERED.**

cc: Counsel